**SEAFARERS WELFARE PLAN,
et al., Plaintiffs,**

v.

**PHILIP MORRIS, et al., Defendants.**

**Civil Action No. MJG–97–2127.**

United States District Court,
D. Maryland.

July 13, 1998.

James E. Gray, Andrew Gendron, Goodell, DeVres, Leech & Gray, LLP, Baltimore, MD, for Lorillard Tobacco Co.

David S. Eggert, Arnold & Porter, Washington, DC, for Philip Morris, Inc.

William F. Ryan, Jr., Whiteford, Taylor & Preston, LLP, Baltimore, MD, for Tobacco Institute, Inc.

James P. Ulwick, Kramon & Graham, P.A., Baltimore, MD, for U.S. Tobacco Co.

F. Ford Loker, Jr., Church & Houff, P.A., Baltimore, MD, Bruce Ginsberg, Marc Rachman, Davis & Gilbert, New York City, for Hill and Knowlton, Inc.

Gregg L. Bernstein, Kimberly Dunn Spelman, Martin, Junghans, Snyder & Bernstein, P.A., Baltimore, MD, Mark G. Cunha, Adam I. Stein, Kevin D. Lewis, Simpson, Thacher & Bartlett, New York City, for B.A.T. Industries, P.L.C.

Barry S. Schaevitz, Jacobs, Nedinger & Finnegan, LLP, New York City, for Smokeless Tobacco Council, Inc.

John McNeill Broaddus, Connerton & Ray, Washington, DC, Michael C. Spencer, Kenneth J. Vianale, Milberg Weiss Bershad Hynes & Lerach LLP, New York City, Steven E. Fineman, Weitz & Luxenberg, New York City, for Seafarers Welfare Plan, et al.

George A. Nilson, Piper & Marbury, Baltimore, MD, Kenneth N. Bass, Karen M. DeSantis, Kirkland & Ellis, Washington, DC, for Brown & Williamson Tobacco Corp., as successor to American Tobacco Co., Brown & Williamson Corp., and R.J. Reynolds Tobacco Co.

Anne E. Cohen, Steven S. Michaels, R. Townsend Davis, Jr., New York City, for Tobacco Research–USA, Inc.

Peter Woolson, Robinson, Woolson O'Connell, LLC, Baltimore, MD, for Liggett Group, Inc.

GARBIS, District Judge.

The Court has before it the motions entitled "Certain Defendants' Motion to Dismiss the First Amended Complaint" and "Certain Defendants' Alternative Motion to Dismiss for Failure to Join Necessary Parties." These motions have been adopted by all Defendants.[1] The Court also has before it the materials submitted by the parties relating to the motions. The Court finds that a hearing is unnecessary.

As discussed herein, the Court concludes that the motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted. Accordingly, it is unnecessary to consider the alternative motion to dismiss under Federal Rule of Civil Procedure 12(b)(7).

---

1. The Moving Defendants are: Philip Morris, Inc., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corp., Lorillard Tobacco Company, The American Tobacco Company, The Council for Tobacco Research—USA, Inc., The Tobacco Institute, Inc., Hill & Knowlton, Inc., and United States Tobacco Company. B.A.T Industries, P.L.C. and Smokeless Tobacco Council have indicated that they join in the instant motion, without prejudice to and without waiving their defenses of lack of personal jurisdiction, as per stipulations entered into by the parties and approved by the Court. Liggett Group, Inc. has also indicated to the Court by letter that it joins in the instant motion.

## I. BACKGROUND

The Plaintiffs in this case are five non-profit labor-management trust funds operating in the State of Maryland (collectively referred to "Plaintiffs" or "the Funds").[2] The Funds are established through collective bargaining and pursuant to the Labor–Management ("Taft–Hartley") Act. They are also employee benefit plans and multi-employer plans within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 ("ERISA").

The Funds provide health care benefits to union workers, their families, and retirees (referred to as "participants" and "beneficiaries"). The Funds are financed through contributions from the employers of covered workers, the amounts of which are negotiated in collective bargaining between the workers' unions and the employers. The Funds are governed by boards of trustees and are legal entities under ERISA. 29 U.S.C. § 1132(d). As such, the Funds hold the Funds' assets in trust for the purpose of providing benefits to participants and their beneficiaries.

The Defendants are this country's leading tobacco companies[3] and their lobbying and public relations agents.[4]

The Funds bring this suit on their own behalf and on behalf of a proposed class of similarly situated funds. As described by the Plaintiffs, "[t]his is an action to recover funds expended by the Plaintiff Funds to provide medical treatment and other benefits and services to their participants and beneficiaries suffering from smoking-related illnesses and to seek appropriate injunctive relief against the Defendants' continuing illegal and outrageous conduct." Compl. ¶ 5. In essence, Plaintiffs allege that, for many years, the Defendants have misrepresented the dangers of smoking cigarettes and the addictiveness of nicotine. They further allege that the Defendants have purposefully inhibited the development of safer tobacco products. As a result, a great many smokers have suffered a variety of serious health problems allegedly stemming from tobacco use.

In their highly detailed and lengthy seventeen[5] count Complaint, which purports to catalogue, among other things, virtually the entire history of the marketing of cigarettes in this country, Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), federal and Maryland antitrust statutes, the Maryland Consumer Protection Act,[6] and under Maryland common law for unjust enrichment, breach of voluntarily undertaken duty, fraud, negligent misrepresentation, and conspiracy.[7]

Plaintiffs do not seek to bring subrogation claims for the medical expenses of individual smokers which the Funds paid. Rather, they assert "independent" or "direct" claims to recover such expenses. Defendants now move to dismiss Plaintiffs' entire Complaint for failure to state a claim upon which relief may be granted.

## II. LEGAL STANDARD

The Court must deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless it "appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would

---

2. The Plaintiffs are: Seafarers Welfare Plan, United Industrial Workers Welfare Plan, Construction Workers' Trust Fund, Cabinetmakers' Local No. 974 and Carpenters' Local No. 1110 Health and Welfare Fund.

3. Philip Morris, Inc., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corp., B.A.T. Industries, P.L.C., Lorillard Tobacco Company, Liggett Group, Inc., The American Tobacco Company, and United States Tobacco Company.

4. The Council for Tobacco Research—U.S.A., Inc., Smokeless Tobacco Council, Inc., The Tobacco Institute, and Hill & Knowlton, Inc.

5. The Court notes that the Complaint skips Count XIII when reciting Counts numbered I through XVII.

6. This claim was previously dismissed without prejudice. However, the Plaintiffs have reinstated it with the consent of the Defendants.

7. Plaintiffs originally also asserted claims for breach of express warranty, breach of implied warranty, negligence, and strict liability. These claims have been dismissed without prejudice by the Plaintiffs.

entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The question is whether in the light most favorable to the Plaintiff, and with every doubt resolved in his behalf, the Complaint states any valid claim for relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure 2d* § 1357 (1990). The Court, when deciding a motion to dismiss, must consider well-pled allegations in a complaint as true and must construe those allegations in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Further, the Court must disregard the contrary allegations of the opposing party. *See A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir.1969).

## III. *DISCUSSION*

■ In this Court's view, Plaintiffs' entire Complaint suffers from the fundamental flaw that the Funds themselves, as opposed to their participants or the pertinent employers, have not suffered any cognizable damages.

As the Plaintiffs point out, the Funds are established and maintained as nonprofit, tax-exempt trusts. The Funds' assets are held in trust "for the exclusive purpose of providing benefits to participants in the [trust] and their beneficiaries." 29 U.S.C. § 1103(c)(1). The Funds are financed by contributions from the Funds' members' employers which are negotiated through the collective bargaining process.

Plaintiffs contend that although the payments to the Funds are deemed employer contributions for tax purposes, the reality is that these monies are substitute wages for the covered workers. As stated by Plaintiffs, "Instead of receiving these monies in their paychecks, the workers, through their unions, negotiate to have their employers contribute to the Funds to finance health coverage for themselves and their families." Pls.' Opp'n at 9. It is from these monies that the medical bills of Fund participants are paid. In addition, to the extent a fund chooses to provide benefits through the purchase of in-surance, the premiums on the insurance which covers the workers are also paid from these contributions.

This Court agrees with the view expressed by Judge Fullam of the United States District Court for the Eastern District of Pennsylvania in *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,* No. 97–5344, 1998 WL 212846 (E.D.Pa. Apr.22, 1998) that the Plaintiff Funds themselves have not suffered any cognizable damages. As Judge Fullam held,

> [W]hether the contributions are properly attributed to the employer or the participating workers, it is clear that plaintiffs' [the Funds'] own economic interests were not affected by the payments. The fact that the medical costs paid out of these funds increased because of defendants' wrongdoing caused no harm to plaintiffs [the Funds]; it merely meant that the unions negotiated a greater level of contributions from the employers.

*Steamfitters,* 1998 WL 212846 at *2. Furthermore, "[i]f the Fund[s] recover[ ] in this lawsuit, [they] would not reimburse contributing employers for their overpayments because [they are] statutorily prohibited from doing so." *Southeast Florida Laborers Dist. Health and Welfare Trust Fund v. Philip Morris,* No. 97–8715–CIV, 1998 WL 186878 at *1 (S.D.Fla. Apr.13, 1998) (citing 29 U.S.C. § 1103(c)(1)). As Judge Fullam noted, unlike the various suits now pending brought by state attorneys general or other governmental entities, the Plaintiffs in the instant case are not the entities which actually paid the increased medical costs from their own assets. Rather, in the instant case, "plaintiffs are merely handling the payments with money provided by others, and have no genuine stake in the matter." *Steamfitters,* 1998 WL 212846 at *2. Finally, Judge Fullam "noted that a reduction of the medical costs payable by plaintiffs [the Funds] would not inure to plaintiffs' [the Funds'] benefit. The money in their hands can only be used to pay benefits on behalf of others, and, since all are non-profit entities, plaintiffs [the Funds] cannot claim to have suffered any economic loss

in the form of lost profits."[8]  *Id.* at *3.

In addition to money damages, Plaintiffs in the instant case also seek injunctive and declaratory relief requiring Defendants to, *inter alia,* publish all of their research pertaining to issues of smoking and health, fund a corrective education campaign designed to reduce smoking among Plaintiffs' participants, cease advertising to minors, and fund smoking cessation programs.  As Judge Fullam held, "While plaintiffs' apparent desire to be helpful to its members and to society in general is commendable, plaintiffs [for the reasons heretofore discussed] simply do not have legal standing to advance such claims, which really belong to the individuals affected."  *Id.* at *3.

This Court agrees with the foregoing reasoning of Judge Fullam, and, for the reasons stated, concludes that Plaintiffs' entire Complaint must be dismissed.

Alternatively, even if the Funds have suffered injury, each of the Plaintiffs' claims is subject to dismissal for other reasons.  As discussed herein, the Court concludes that Plaintiffs' injuries are too remotely caused by the Defendants to satisfy the requirements of proximate cause, Plaintiffs lack "antitrust standing," and Plaintiffs have failed to state a claim for unjust enrichment.[9]

### A.  Common Law Tort Claims

■ Assuming that the Funds have suffered damages, the Court concludes that any damages suffered by them were too remotely caused by the Defendants.  Accordingly, while the Defendants may have been a cause in fact of Plaintiffs' damages, Plaintiffs' damages are too indirectly related to Defendants' actions to satisfy the requirements of proximate causation.

With regard to Plaintiffs' common law tort claims, this Court is mindful of a relatively recent decision by the Circuit Court for Bal-

timore City addressing Maryland's common law proximate cause requirements in the context of the State of Maryland's suit against the tobacco industry.  In *State v. Philip Morris, Inc.,* No. 96122017, CL211487, 1997 WL 540913 (Md.Cir.Ct. May 21, 1997), the Circuit Court for Baltimore City was presented with the issue of whether the State of Maryland could state a claim, in its own name, under Maryland common law to recover monies expended by the State through its medicaid program to treat smoking related illnesses of Maryland citizens.  The circuit court began its extensive discussion of this issue by noting that "[a]t common law a plaintiff had no right to recover damages from a defendant tortfeasor as a result of the defendant's injuries, harm, or lack of care to a third person, regardless of the fact that the defendant's actions may have put the plaintiff to what otherwise would have been unnecessary or increased expense."  *Id.* at *9.

The circuit court then discussed the classic case of *Anthony v. Slaid,* 52 Mass. (11 Met.) 290 (1846), in which the plaintiff had agreed to provide and pay for the medical expenses of all of the poor people in a small town. The defendant's wife committed a battery on one of town's poor people, which led to the plaintiff incurring additional medical expenses for the pauper.  The *Anthony* court did not allow the plaintiff's claim, holding that the damages which plaintiff suffered as a result of the defendant's tort was "too remote and indirect."  *State v. Philip Morris,* 1997 WL 540913 at *10 (quoting *Anthony,* 52 Mass. at 291).  As summarized by the circuit court, the "plaintiff was not permitted to maintain a cause of action against a defendant tortfeasor as a result of the tortfeasor putting plaintiff to increased medical expenses resulting from the tortfeasor's injuries to a third party."  *Id.*

After discussing several more cases illustrative of this principle,[10] the circuit court

---

8.  Furthermore, even if they were to prevail in the instant suit, the Funds "could not unilaterally reduce the employers' contributions because these contributions are determined in a collective bargaining agreement to which the Fund[s are] not a party." *Southeast Florida Laborers Dist. Health and Welfare Trust Fund v. Philip Morris,* No. 97–8715–CIV, 1998 WL 186878 at *1 (S.D.Fla. Apr.13, 1998).

9.  Thus, it is unnecessary to reach the myriad of other arguments advanced by the Defendants against Plaintiffs' individual counts.

10.  Including one from the United States Supreme Court, *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (discussing the remoteness principle in the RICO context).  *Holmes* will be

concluded that "the State of Maryland in the present action had no right at common law, and consequently has no right now, to assert claims in its own name against Defendants as alleged tortfeasors for the harm Defendants allegedly caused (whether intentional or not) to third party smokers."[11] *Id.* at *12. The court ·held that "[i]n the absence of some special statute allowing recovery, the damages are deemed under the proximate cause analysis to be too remote and indirect for plaintiffs to recover."[12] *Id.* at *14. However, the court held that while the State could not bring direct common law claims in its own name against the Defendants, the State was entitled to bring such claims in the name of each individually injured medicaid recipient under the equitable doctrine of subrogation. *Id.* at *13. Furthermore, the State had a subrogation remedy against the Defendants as provided by Md.Code Ann. Health–Gen. § 15–120. *Id.* at *3.

Plaintiffs in the instant case attempt to distinguish their claims from the State's claims which were rejected in *State v. Philip Morris.* They argue that rather than seeking to recoup the medical expenses which they paid on behalf of injured smokers, they instead seek to recover for their "increased cost of doing business."[13] In essence, Plaintiffs contend that by concealing and misrepresenting the "truth"[14] about tobacco's harmful effects, the Defendants prevented the Plaintiffs "from taking action to reduce

or eliminate their cost burdens from tobacco-related disease." Pls.' Opp'n at 10. As stated by the Plaintiffs,

> Had Defendants disclosed the truth about the addictive qualities of nicotine and the disease-causing effects of smoking, the Funds' trustees could have taken action to protect the Funds from the financial burdens of tobacco-related disease by, among other things: limiting coverage of smoking-related disease, imposing cost-sharing requirements (*e.g.* deductibles and/or co-payments) on participants who smoke; requiring smokers to participate in cessation programs; or requiring participants at risk for smoking to participate in smoking prevention programs.

*Id.* at 10–11. Plaintiffs also contend that had the Defendants not suppressed the manufacture and sale of safer cigarettes, they could have encouraged their participants to smoke the safer cigarettes, presumably thereby reducing the health costs that the smokers would have incurred.

The Defendants contend that the State of Maryland made this identical argument before the Circuit Court for Baltimore City, and that that court rejected it vis-a-vis the State's claims.[15] This Court does not have before it the pleadings that were submitted to the circuit court. To the extent that the Defendants' characterization of what transpired in that case is accurate, this Court

discussed *infra* with regard to Plaintiffs' RICO claims.

**11.** Thus, contrary to Plaintiffs' contention, the remoteness principle applies equally to both negligent and intentional torts.

**12.** The circuit court noted that its holding "does not mean that the Court is unmindful of the dilemma faced by the State and the magnitude of the harm which may have been caused by the defendants. Assuming the truth of all relevant facts as argued by the Plaintiff, it is clear that the State of Maryland has borne the tremendous burden of this health care crisis, in both lives and financial resources. Unfortunately, ... without proper legal remedy, there exists no claim upon which relief can be granted." *State v. Philip Morris, Inc.,* No. 96122017, CL211487, 1997 WL 540913 at *14 (Md.Cir.Ct. May 21, 1997).

**13.** Plaintiffs disavow any intention to bring subrogation claims, presumably, among other rea-

sons, to avoid having to identify and prove the multitude of individual cases involved.

**14.** As the Plaintiffs view such "truth." The Court is expressing no opinion as to whether, on the merits, the Defendants are guilty of such concealment or misrepresentation.

**15.** Defendants contend that "What the Funds fail to acknowledge is that the very same attempt to re-package the State's derivative injury claim as a claim for 'direct' harm was made by the State and rejected by the court in *State v. Philip Morris;* both the complaint and the briefs submitted by the State contended that the State itself had 'detrimentally relied' upon defendants' supposed fraud and concealment. The *State v. Philip Morris* court saw through that verbal charade and recognized that—as here—all of the claimed injuries to the State flowed from the injuries allegedly inflicted upon smokers." Defendants' Reply at 4–5.

agrees with the result reached by the circuit court. Even if the Defendants' characterization of the circuit court's ruling were wrong, however, this Court nonetheless finds that, although the question is a close one, Plaintiffs' attempt to recharacterize their injuries as "direct" fail as a matter of law.

The Defendants have stated that, in total, there are approximately 40 union health and welfare fund lawsuits pending against the tobacco industry in federal courts around the country. The parties have made the Court aware of three recent decisions from federal district courts addressing the issues currently under discussion in the context of similar 12(b)(6) motions filed by the tobacco defendants in cigarette "cost recovery" lawsuits brought by health and welfare trusts funds. Each of those courts has considered plaintiff funds' attempts to articulate a direct injury entitling them to direct common law claims, as opposed to being limited to subrogation claims. The Court finds the analyses in those cases to be instructive.[16]

While the question is a close one, this Court finds itself in agreement with the views expressed by Judge Ryskamp of the Southern District of Florida in rejecting a plaintiff fund's attempt to recharacterize its injury more directly. Although the plaintiff fund attempted to characterize its damages as being for its increased cost of doing business, Judge Ryskamp held that "[t]he Fund cannot escape the fact that any economic injuries which it incurred are purely derivative of the physical injuries which its participants suffered. The Fund cannot, as a matter of law, sustain a claim against the defendants without a closer connection to

the defendants." *Southeast Fla. Laborers Dist. Health and Welfare Trust Fund v. Philip Morris*, No. 97–8715–CIV, 1998 WL 186878 at *4 (S.D.Fla. Apr.13, 1998).

■ Boiled down to their essence, Plaintiffs' claims are that had they known the truth about smoking, they would have been able to pay fewer medical expenses for their participants who smoked. Plaintiffs' damages would thus be the difference between the health care costs which they actually paid on behalf of injured smokers minus the amount that they otherwise would have paid absent Defendants' alleged misconduct. As discussed in *State v. Philip Morris*, the longstanding common law rule is that one who pays medical expenses on behalf of an injured third party does not have a direct action against the tortfeasor who caused the injury.[17] That longstanding rule bars the Plaintiffs' claims in this case, notwithstanding Plaintiffs' artful recharacterization of them. *Cf. Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, No. 97–5344, 1998 WL 212846 at *2 (E.D.Pa. Apr.22, 1998) (stating that the Court was not persuaded that the Plaintiffs had satisfied the element of proximate cause). *But see Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 7 F.Supp.2d 277, 283–86 (S.D.N.Y.1998) (Scheindlin, J.) (holding that the plaintiff funds had sufficiently alleged direct economic injury such that the requirements of proximate cause were satisfied).

Accordingly, the Court concludes that Plaintiffs' common law tort claims are too remote as a matter of law to satisfy the requirements of proximate causation.[18]

---

**16.** In addition, the parties have cited to numerous decisions issued in cases brought by state attorneys general or other governmental entities making similar allegations against the tobacco industry. While these decisions certainly are relevant to the instant discussion, the Plaintiff Funds stand in a somewhat different position than the states, which are sovereign entities. By contrast, the three recent federal district court decisions addressing claims brought by ERISA funds are directly on point. The Court therefore considers them to be most persuasive.

**17.** Certainly the wealthy benefactor in *Anthony v. Slaid* would have paid fewer medical expenses on behalf of the town's paupers had the defendant's wife not committed a battery against one

of them. Still, his claim to recoup the additional medical expenses that he was forced to pay was barred as too remote.

**18.** The Court rejects Plaintiffs' contention that unlike a typical insurer, they have a "special relationship" with their participants which gives them some direct injury. As stated by the Minnesota Supreme Court in rejecting a similar argument by Blue Cross and Blue Shield of Minnesota, "It is true that Blue Cross occupies a different niche in the complex web of health care institutions than that of indemnity or insurance companies; however, these differences in legal relationship to providers and patients do not, in our view, overcome the need for a closer connec-

## B. RICO Claims

■ The same principles of proximate causation which animated the Court's discussion of Plaintiffs' common law tort claims serve to bar Plaintiffs' RICO claims.

In Counts I and II, Plaintiffs allege a variety of practices which they contend constitute RICO violations. Under RICO, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor ..." 18 U.S.C. § 1964(c). In Counts I and II, Plaintiffs allege violations of § 1962(a), (c), and (d).[19]

■ The Supreme Court has held that under § 1964(c), a plaintiff must prove that the defendant's acts were a proximate cause, in addition to being a "but for" cause, of the plaintiff's injury.[20] *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). In order to satisfy RICO's proximate cause requirement, there must be "some direct relation between the injury asserted the injurious conduct alleged. Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Id.* at 268–69, 112 S.Ct. 1311.

As discussed above with regard to Plaintiffs' common law tort claims, the Court finds that the Plaintiffs' claims are too remote to satisfy the requirements of proximate cause. This Court agrees with the views expressed by Judge Ryskamp in *Southeast Florida:*

> Inspection of the Fund[s'] claims reveal that the alleged harm does not affect the Fund[s] directly, but only affects the Fund[s'] participants.... The Fund[s are]

not suing to recover damages which the defendants caused to [them] directly, but [are] attempting to recover economic damages which [they] incurred by virtue of [their] contractual relationship with third parties who were allegedly harmed by the defendants. The "direct relation" between the Fund[s'] alleged injury and the defendants' conduct is absent.

*Southeast Fla. Laborers Dist. Health and Welfare Trust Fund v. Philip Morris,* No. 97–8715–CIV, 1998 WL 186878 at *5 (S.D.Fla. Apr.13, 1998).

Similarly, in *City and County of San Francisco v. Philip Morris, Inc.,* 957 F.Supp. 1130 (N.D.Cal.1997), the court was faced with a suit by several cities and counties against cigarette manufacturers and their trade associations to recover the smoking-related health costs that they were forced to pay out on behalf of their residents. As in the instant case, the plaintiffs alleged that the defendants engaged in a conspiracy to mislead the plaintiffs and their residents about the dangers of smoking and the addictiveness of nicotine. *Id.* at 1134.

The defendants in *San Francisco* argued, as they do in the instant case, that the plaintiffs' damages were too remote to satisfy RICO's proximate cause requirement. As in the instant case, the Plaintiffs contended that "their harm does not flow merely from the acts of defendants toward third parties, but from the alleged misrepresentations, concealment of information, and breach of affirmative duties directed toward the plaintiffs themselves." *Id.* at 1137. Notwithstanding the plaintiffs' attempt to recharacterize their theory of recovery, Judge Jensen of the Northern District of California held that any alleged RICO violations by the defendants

tion between the injury and alleged tortfeasor." *State v. Philip Morris, Inc.,* 551 N.W.2d 490, 495 (Minn.1996). As Judge Ryskamp held, "This 'special relationship' fails to show that the [Plaintiff Funds have] suffered direct harm." *Southeast Fla.,* 1998 WL 186878 at *4.

**19.** Count I alleges violation of §§ 1962(c) and (d) by all Defendants except the Council for Tobacco Research, the Tobacco Institute, and Hill & Knowlton, Inc. Count II alleges violation of §§ 1962(a) and (d) by all Defendants.

**20.** As the Supreme Court noted, "In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.'" *Holmes,* 503 U.S. at 266 n. 10, 112 S.Ct. 1311 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* § 41, p. 264 (5th ed.1984)).

were not directly linked to the plaintiffs' increased health care expenses. *Id.*

The Supreme Court in *Holmes* listed three policy reasons for limiting recovery under RICO to direct victims. First, the Court was concerned that "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other independent factors." *Holmes,* 503 U.S. at 269, 112 S.Ct. 1311. Second, there is a need to avoid the risk of multiple recoveries. *Id.* Third, courts must take into account the fact that directly injured victims can generally be counted on to "vindicate the law as private attorneys general," thereby satisfying the deterrence purposes of RICO. *Id.*

Analysis of the *Holmes* factors supports the Court's conclusion that Plaintiffs' claims are too remote. First, and perhaps most importantly, under Plaintiffs' theory, it would be extremely difficult, if not impossible, to determine the amount of damages attributable to the Defendants' conduct given the multitude of other factors that could affect Plaintiffs' smoking related damages. For instance, it would be extremely difficult, if not impossible, to determine whether, and the extent to which, any of the Funds' participants had other health problems which may have exacerbated the costs of health care for that smoker. *See San Francisco,* 957 F.Supp. at 1138. Furthermore, taking as a given Plaintiffs' theory that they would have taken steps to discourage their participants from smoking, thereby reducing the Funds' outlay of smoking related medical expenses, it would be necessary to determine what impact the Funds' hypothetical steps would have had on the smoking habits of their participants, had they been hypothetically implemented, in order to determine the extent of Plaintiffs' damages.

Second, there is a definite risk of multiple recoveries in this case if Plaintiffs are allowed to proceed. The Court has been informed that there is currently pending in the Circuit Court for Baltimore County a certified class action [21] of all allegedly injured Maryland smokers. This plaintiff class presumably includes most, if not all, of the Funds' participants and presumably seeks to recover the same medical expenses which the Funds' seek in the instant case.[22] *Cf. Southeast Florida,* 1998 WL 186878 at *5. Furthermore, if Plaintiffs' theory were accepted, the Court sees no logical reason which would prevent the employers from attempting to recover the same monies that they paid into the Funds.

Third, the pendency of the class action in the Circuit Court for Baltimore County shows that there are ample "private attorneys general" available to vindicate the Defendants' alleged wrongs. *See id.*

In sum, the Court concludes that Plaintiffs have failed to satisfy RICO's proximate cause requirements. Accordingly, Counts I and II must be dismissed.[23]

## C. *Antitrust Claims*

In Counts III, V, VI, and VII, Plaintiffs assert claims under the federal and Maryland antitrust acts. They allege, *inter alia,* that the Defendants unlawfully restrained the dissemination of information regarding the safety and addictiveness of cigarettes, thereby eliminating alternative products from the market and causing smokers to suffer smoking-related illnesses.

---

**21.** *Richardson v. Philip Morris, Inc.,* No. 96145050/CE212596 (3d.Cir.Ct.1997).

**22.** In light of the general principles of the collateral source rule, the Court fails to see why the Plaintiffs' injured participants could not recover these same medical expenses. This is particularly so given Plaintiffs' insistence that the employer contributions to the Funds are in fact substitute wages for the employees, i.e., that it is truly the employees' own funds being contributed.

**23.** Plaintiffs' reliance on *State v. American Tobacco Co.,* No. CL 95–1466AH, 1996 WL 788371 (Fla.Cir.Ct. Dec.13, 1996) is misplaced. *State v. American Tobacco* was based upon Florida's RICO act, not the federal statute, and on the court's conclusion that the State, as opposed to a private litigant, did not have to meet the requirements of proximate cause. *See Southeast Florida,* 1998 WL 186878 at *5 n. 5 (discussing *State v. American Tobacco*). Furthermore, to the extent that other courts have allowed federal RICO claims to go forward in cigarette cost recovery cases, this Court notes a respectful disagreement with those decisions for the reasons stated above.

Furthermore, Defendants claim that the Defendants' conspiracy in restraint of trade

has had the purpose and effect of restraining competition in the market for cigarettes and tobacco products ..., of artificially inflating the price of and demand for Defendants' cigarettes and tobacco products, of erecting barriers to competition and entry into the market and protecting the structure of the market, of causing the suppression of information that would otherwise have affected consumer and regulatory behavior, and of causing millions of persons to purchase cigarettes and tobacco products when they otherwise would not have done so. The natural effect of the conspiracy has been to raise and stabilize prices, wrongfully increase Defendants' profits, restrain and suppress competition in the research, development, production, and sale of alternative products, and standardize the tobacco products manufactured and sold in the United States.

The contract, combination, or conspiracy also increased smoking-related illnesses and associated health care costs and artificially suppressed research and treatment of smoking-related illnesses.

Compl. ¶¶ 267–68. These practices have allegedly injured the Plaintiffs' business and property by causing "a substantial increase in the cost of medical care for their participants and beneficiaries." [24] *Id.* ¶ 270.

The same "remoteness" principle which animated the Court's discussion of Plaintiffs' common law and RICO claims is dispositive of their antitrust claims. Absent some direct relation between the injury asserted and the allegedly unlawful conduct, the requirements of proximate cause are not satisfied.[25] *See Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 540–41, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Indeed, the *Holmes* court, in articulating the proximate cause requirements under RICO adopted and applied the reasoning of *Associated General Contractors* from the antitrust context.[26] *Holmes,* 503 U.S. at 268, 112 S.Ct. 1311. As described by the *Holmes* court, *Associated General Contractors* stands for the proposition that directness of relationship between the defendant's conduct and the plaintiff's injury is a "central element" of causation under the Clayton Act. *Id.* at 269, 112 S.Ct. 1311; *cf. Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.,* 828 F.2d 211, 219–20 (4th Cir.1987) (holding that plaintiff could not state an antitrust claim under the Clayton Act for either damages or injunctive relief because the causal relation between the alleged illegal conduct and the harm suffered was remote rather than direct). Accordingly, for the reasons stated above, Plaintiffs' antitrust claims must be dismissed.[27]

24. The claims brought under the Maryland Antitrust Act assert essentially the same antitrust violations. The Maryland General Assembly has declared that courts construing that Act should be guided by the interpretations given to the federal antitrust acts. Md.Code Ann. Com. Law II § 11–202; *Cities Serv. Oil Co. v. Burch,* 29 Md.App.. 430, 349 A.2d 279, 283 (Md.Ct. Spec.App.1975). Thus, the parties agree that the Court's inquiry is the same under both the federal and Maryland statutes. *See* Pls.' Opp'n at 32.

25. Although § 4 of the Clayton Act states that "any person who shall be injured ... by reason of anything forbidden in the antitrust laws may sue," federal courts have not interpreted this section as broadly as its literal language could suggest. As stated by the Supreme Court, "It is reasonable to assume that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property." *Associated General Contractors of California, Inc. v. California State*

Council of Carpenters, 459 U.S. 519, 535, 103 S.Ct. 897, 74 L.Ed.2d 723 (quoting *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 477, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982)).

26. The *Associated General Contractors* court stated that Congress intended that antitrust litigation "would be subject to constraints comparable to well-accepted common-law rules applied in comparable litigation", including the requirements of proximate cause. *Associated General Contractors,* 459 U.S. at 533, 103 S.Ct. 897.

27. The fact that the Circuit Court for Baltimore City allowed the State of Maryland to pursue its claim under the Maryland Antitrust Act does not help the Plaintiff Funds. The circuit court based its decision on a provision of the Maryland statute which it felt made "it absolutely clear that the Maryland legislature intended for the State to pursue causes of action against potential antitrust violators regardless of whether injuries sustained by the state were remote and regardless of whether or not the State dealt directly with the

■ Furthermore, this Court agrees with the conclusions of Judges Scheindlin, Ryskamp, and Fullam[28] that the Plaintiff Funds lack "antitrust standing." *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 7 F.Supp.2d 277, 290, (S.D.N.Y.1998); *Southeast Fla. Laborers Dist. Health and Welfare Trust Fund v. Philip Morris*, No. 97–8715–CIV, 1998 WL 186878 at *6 (S.D.Fla. Apr.13, 1998); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, No. 97–5344, 1998 WL 212846 at *3 (E.D.Pa. Apr.22, 1998).

Antitrust injury has been defined as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful. The injury should reflect anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). As stated by the United States Court of Appeals for the Fourth Circuit, "the damages sought must flow from that conduct which is proscribed by the antitrust laws. Because the antitrust laws are intended to protect competition ... only injury caused by damage to the competitive process may form the basis of an antitrust claim." *Thompson Everett, Inc. v. National Cable Advertising, L.P.*, 57 F.3d 1317, 1324 (4th Cir.1995) (citations omitted).

In the context of this case, as aptly stated by Judge Ryskamp,

alleged violator." *State v. Philip Morris, Inc.*, No. 96122017, CL211487, 1997 WL 540913 at *20 (Md.Cir.Ct. May 21, 1997). There is no such statutory provision for private plaintiffs like the Plaintiff Funds.

28. The three judges who, to date, have issued decisions in cigarette cost recovery suits brought by ERISA funds against the tobacco industry.

29. Plaintiffs' reliance on *Blue Shield of Va. v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982) is misplaced. In *McCready*, the plaintiff was a subscriber in Blue Shield. She alleged an antitrust conspiracy between Blue Shield and an organization of psychiatrists to exclude psychologists from receiving compensation from Blue Shield. Thus, the plaintiff could not receive reimbursement for the mental health treatment she received from a psychologist, although she could have been reimbursed if she

The gravamen of the Fund[s'] complaint is that health care prices soared as a result of the defendants' concealment of information. Because many of the Fund[s'] participants were addicted to cigarettes, the Fund[s'] health care costs increased. This injury is simply not the type of injury that the antitrust laws were intended to prevent. *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) (antitrust injury consists of injury caused by higher prices, reduced output, or damage to a competitor's business). Furthermore, the claim is wholly derivative and thus not cognizable as an antitrust injury.

*Southeast Florida*, 1998 WL 186878 at *6 (final citation omitted).

Accordingly, the Court concludes that Plaintiffs' antitrust claims must be dismissed.[29]

### D. Consumer Protection Act Claim

■ In Count IV, Plaintiffs assert a claim under the Maryland Consumer Protection Act. Under the statute, "any person may bring an action to recover for injury or loss sustained by him *as the result* of a practice prohibited by" the Act. Md.Code Ann. Com. Law II § 13–408 (emphasis added). Plaintiffs' theory appears to be that (1) the Defendants engaged in an unfair or deceptive trade practice by misrepresenting the harmful effects of smoking and the addictive properties of nicotine, (2) individual smokers were mis-

had visited a psychiatrist instead. The Supreme Court held that she had standing because she was a consumer of psychotherapy services who was injured by the alleged conspiracy to prevent psychologists from serving Blue Shield subscribers. Thus, *"Blue Shield* did not involve a derivative claim. On the contrary, it involved a purchaser's claim against an antitrust offender. In this case, the Fund[s have] not purchased any products from the defendants. Thus, [their] claim is wholly derivative." *Southeast Florida*, 1998 WL 186878 at *6 n. 7. The Plaintiff Funds are not in an analogous position to the plaintiff in *McCready*. On the allegations of the instant case, if anyone other than a competitor had standing to assert an antitrust injury stemming from the Defendants' alleged conspiracy to stifle information about safer cigarettes and the health consequences of tobacco, by the reasoning of *McCready*, it would be individual smokers, as they were the consumers of tobacco products.

led, (3) smokers continued to smoke cigarettes, (4) smokers contracted smoking-related illnesses and incurred medical costs, and (5) the Plaintiffs therefore paid more for tobacco-related medical expenses of their participants and beneficiaries than they otherwise would have.

For the reasons stated above with regard to Plaintiffs' other claims, the Court concludes that the causal connection between the Defendants' alleged unlawful trade practices and the Plaintiffs' alleged injury is too tenuous to fall within the Consumer Protection Act. Any injuries sustained by the Plaintiff Funds were not "as the result of a practice prohibited by" the Act. *Cf. Sacks v. Phillip–Morris, Incorporated*, No. Civ. A. WMN–95–1840, 1996 WL 780311 at *2 (D.Md. Sept.19, 1996) (holding that the causal connection between defendant's misrepresentations about the technical feasibility of making a "firesafe" cigarette and a fire, which was begun when a burning cigarette ignited a sofa, was too tenuous to fall within the Act).[30] Accordingly, Plaintiffs' Consumer Protection Act claim must be dismissed.[31]

### E. *Unjust Enrichment*

In Count VIII, Plaintiffs assert a claim for unjust enrichment. The elements of a claim for unjust enrichment are

1. A benefit conferred on the defendant by the plaintiff; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the

defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Richard F. Kline, Inc. v. Signet Bank/Maryland*, 102 Md.App. 727, 651 A.2d 442, 444 (Md.Ct.Spec.App.1995) (quoting *Yost v. Early*, 87 Md.App. 364, 589 A.2d 1291 (Md.Ct. Spec.App.1991)).

In essence, Plaintiffs allege that they have unjustly enriched the Defendants by paying the medical expenses of tobacco users who were injured by the Defendants' allegedly unlawful conduct. Plaintiffs contend that by paying medical expenses arising out of tobacco-related illnesses, they relieved the Defendants of their obligation to pay such medical costs, thereby unjustly enriching the Defendants. The Court concludes that Plaintiffs have failed to state a claim.

A necessary element of a claim of unjust enrichment is that the plaintiff conferred a benefit on the defendant. The Plaintiffs paid the smoking-related medical costs of their participants because they were legally obligated by contract to do so. Thus, the expenses that they incurred were at the behest of their participants. The Plaintiff Funds did not confer a benefit on the Defendants.[32] *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 7 F.Supp.2d 277, 294 (S.D.N.Y.1998); *see also Southeast Florida Laborers Dist. Health and Welfare Trust Fund v. Philip Morris*, No. 97–8715–CIV, 1998 WL 186878 at *4 (S.D.Fla. Apr.13, 1998)

---

**30.** The parties dispute whether, under the CPA, the Plaintiffs must be "consumers" of cigarettes in order to state a claim. In *State v. Philip Morris*, relying on the statutory language that "any person" may bring a CPA claim, the Circuit Court for Baltimore City allowed the State's Consumer Protection Act claim to go forward, finding that "neither the State nor any other plaintiff is required to be a consumer in order to assert a cause of action for damages under the CPA." *State v. Philip Morris, Inc.*, No. 96122017, CL211487, 1997 WL 540913 at *18 (Md. Cir. Ct. May 21, 1997). Other courts have stated, in a variety of contexts, that the CPA only provides a cause of action for consumers. *See, e.g., Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 597 n. 9 (4th Cir.1992) (citing *Layton v. AAMCO Transmissions, Inc.*, 717 F.Supp. 368, 371 (D.Md.1989)). In light of the Court's conclusion that the causal connection between the al-

leged CPA violation and Plaintiffs' injuries is too tenuous, it is unnecessary to decide this issue.

**31.** Although the *State v. Philip Morris* court allowed the State's CPA claim to go forward, it did not separately address the causation issue discussed above. It is not clear whether such a challenge was made by the defendants in that case. In any event, irrespective of what the *State v. Philip Morris* court may or may not have been presented with, this Court concludes that Plaintiffs have failed to state a claim.

**32.** Indeed, the Court fails to see how the Plaintiffs "discharged" or "satisfied" any obligation which the Defendants had to pay the medical expenses of individual smokers. Given the collateral source rule, the Court assumes that the Defendants are still potentially liable to individual smokers for such damages.

("The Fund has not cited, nor has the Court located, any Florida case employing an unjust enrichment theory to obligate a defendant to provide medical care to smokers where the plaintiff is legally obligated to do so.").[33]   Accordingly, Plaintiffs' unjust enrichment claim must be dismissed.

## IV.  *CONCLUSION*

For the foregoing reasons,

1.  Certain Defendants' Motion to Dismiss the First Amended Complaint is GRANTED.

2.  Certain Defendants' Alternative Motion to Dismiss for Failure to Join Necessary Parties is DENIED AS MOOT.

---

**33.** The Court does not reach the Defendants' contention that this claim must be dismissed because the Plaintiffs have an adequate remedy at law.