Mary Ann SLABY, et al., Plaintiffs.

v.

Rhodes W. FAIRBRIDGE,
et al., Defendants.

Civil Action No. 96–CV–2338 (RMU).
Document Nos. 7–9, 13, 19, 25 and 26.

United States District Court,
District of Columbia.

April 1, 1998.

Mary Ann Slaby, Washington, DC, pro se.

Rhodes W. Fairbridge, New York City, pro se.

Rudolph Contreras, U.S. Attorney's Office, Washington, DC, Diane Zipursky, National Broadcasting Co., Inc., Washington, DC, Thomas Douglas Hollowell, Jr., Rogers & Wells, Washington, DC, Richard Albert Simpson, Ross, Dixon & Masback, L.L.P., Washington, DC, for National Aeronautics and Space Admin., Science Journal, American Ass'n for Advancement of Science, Journal of Geophysical Research, American Geophysical Union, Bob Ryan and NBC.

Diane Zipursky, National Broadcasting Co., Inc., Washington, DC, Richard Albert Simpson, Ross, Dixon & Masback, L.L.P., Washington, DC, for WRC–TV, NBC.

### MEMORANDUM OPINION

URBINA, District Judge.

**Granting All Defendants' Motions to Dismiss; Denying All Pending Motions as Moot; and Dismissing the Above-captioned Action.**

### I. Introduction

*Pro se* plaintiff Mary Ann Slaby, on behalf of herself and Synthetic Hydrocarbons, brings this action for monetary damages based on the alleged misappropriation and mishandling of Ms. Slaby's earthquake prediction theory. Mary Ann Slaby, a self-employed author and scientist, owns Synthetic Hydrocarbons, an unincorporated business located in the District of Columbia. The plaintiff filed suit against five separate groups of defendants: (1) Rhodes W. Fairbridge; (2) the National Aeronautical and Space Administration ("NASA"); (3) the Science Journal and the American Association for the Advancement of Science (referenced collectively as "AAAS"); (4) the Journal of Geophysical Research and the American Geophysical Union (referenced collectively as "AGU"); and (5) Bob Ryan, NBC Inc., and WRC–TV NBC (referenced collectively as "NBC").

This matter comes before the court on each of the five defendant's motions to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). Upon consideration of the parties' submissions and the relevant law, the court grants the defendants' motions and dismisses the above-captioned action for failure to state to a claim.

### II. Background

#### A. General Background

The plaintiff brings claims against the defendants apparently arising from the alleged theft of her scientific theory for earthquake prediction. Plaintiff claims to have "discovered and developed a method for predicting the time, location and magnitude in the occurrence of earthquakes based on an electromagnetic signal produced by correlated sunspots." Complaint ("Compl.") ¶ 3. The theory also supposedly predicted volcanic eruptions apparently caused by these same "signals." *Id.* For about a year, the plaintiff sent her unsolicited "Earthquake Prediction Newsletter" to various embassies, businesses, and media outlets, but stopped because "too many unexplained explosions or plane crashes seemed too closely linked" to places the newsletter was distributed. Compl. ¶¶ 7, 8. Plaintiff purports to link with certainty two explosions and four airplane crashes to her earthquake predictions. Compl. ¶¶ 8, 21.

To further advance her research in earthquake theory, she submitted an unsolicited proposal for funding to NASA and submitted several manuscripts to several scientific journals for publication. Plaintiff alleges that NASA negligently handled her manuscript and that the journals unlawfully rejected her manuscripts. Compl. ¶¶ 48–50, 53–54. Presumably as part of a chain of related events, plaintiff also alleges that between 1993 and 1996 "someone" repeatedly entered her residence to delete and duplicate files from her computer. Compl. ¶ 10. According to plaintiff, some unspecified concepts contained in the files subsequently appeared in the works of "other" scientists. Compl. ¶¶ 16–20, 83–85. The plaintiff further claims to have placed a "tag" on her work "[making] it readily and immediately traceable back to her if the ideas were used," thereby causing others "to seriously rethink using it without permission." Compl. ¶ 22.

As a result of these events, the plaintiff brought action asserting various federal and state claims. Although the plaintiff's complaint is difficult to comprehend, it makes ambiguous references to claims of violation of the D.C.Code, violation of the Fourth, Ninth and Fourteenth Amendments, negligence, and gender discrimination.

## B. Facts Specific to Each Group of Defendants

### 1. Defendant Rhodes W. Fairbridge

Defendant Rhodes W. Fairbridge is a retired Columbia University Professor of Geology who the plaintiff alleges has "an unclear employee relationship to NASA." Compl. ¶ 48. On May 30, 1995, while attending defendant AGU's "Spring Meeting," she saw defendant Fairbridge speak. She alleges that Fairbridge "presented a graph, in the presentation of his talk before the AGU, which was contained in the stolen notes and computer files." Compl. ¶ 18. Plaintiff claims that the graph used in Fairbridge's presentation must have been generated by an equation "written by Plaintiff and contained in her computer files which had been stolen." Compl. ¶ 19.

Specifically, the plaintiff claims that defendant Fairbridge made "false representations and statements" to NASA, the Science Journal, and AGU that caused the plaintiff's manuscript to be rejected for publication. Compl. ¶ 32, 38–40. In addition, plaintiff claims that defendant Fairbridge broke into her premises and duplicated her computer files. Compl. ¶ 36.

### 2. Defendant NASA

Plaintiff alleges that, in 1992, she submitted an unsolicited proposal for grant funding to NASA. Specifically, she requested funding to monitor electromagnetic signals to develop an early warning system for earthquakes or to construct a "graviton beam" that would interfere with an electromagnetic signal and prevent the occurrence of earthquakes. Compl. ¶ 4. NASA denied funding for plaintiff's proposal. Compl. ¶ 6.

Plaintiff alleges that one of NASA's employees, defendant Dr. Rhodes W. Fairbridge, obtained unauthorized access to her proposal while it was under review at NASA. Compl. ¶ 48. She claims that Fairbridge used the information he obtained to break into her premises and duplicated her computer files. Id. Based on this alleged unlawful entry by Fairbridge, the plaintiff contends that defendant NASA was negligent in securing her proposal.

### 3. Defendants AAAS and the Science Journal ("AAAS")

Plaintiff submitted three manuscripts for publication in the Science Journal.[1] Her claims arise from the rejection of these manuscripts for publication. Plaintiff asserts four claims against defendant AAAS. First, she alleges that members of AAAS gave plaintiff's "publishing ideas and models to friends and colleagues with whom they had worked in the past and owed favors." Compl. ¶ 74. Second, the plaintiff avers that

---

1. The plaintiff claims to have submitted the following three manuscripts: (1) "Evidence that Gravitational Radiation Travels Faster than the Speed of Light," 1992; (2) "Evidence the Earth Fractured at the Pacific to Produce the Moon," 1994; (3) "Proton Fusion is Endothermic and Violates the Second Law of Thermodynamics," 1995. Compl. ¶ 11.

AAAS somehow obtained the proposal she sent to NASA and gave the information to "friends, colleagues, and acquaintances to pay off previous academic debts of one or more of the editors." Compl. ¶ 76. Third, the plaintiff claims that AAAS's rejection of her manuscripts was based upon sex discrimination, in violation of 42 U.S.C. § 2000a *et seq.* Compl. ¶ 75. Finally, plaintiff claims that AAAS rejected her manuscripts for reasons other than scientific merit, in violation of the Ninth and Fourteenth Amendments. Compl. ¶ 86.

#### 4. Defendants NBC, NBC Washington Affiliate WRC–TV, WRC–TV Meteorologist Bob Ryan ("NBC")

Plaintiff contends that defendant NBC acquired her method and technique for predicting earthquakes and profited from the use of that technique in its weather reports on WRC–TV. In 1992, the plaintiff contacted WRC–TV to inform them that an earthquake was imminent. She alleges that immediately after that call, she noticed that she was being followed whenever she left her home. Compl. ¶¶ 105–106. Plaintiff then asserts that soon after she solicited Japanese newspapers to publish her Earthquake Newsletter, she noticed that defendant "Bob Ryan began to court the attention of [Japanese] Ambassador Mr. Kuriyama in the weather presentations." Compl. ¶ 116. Subsequently, according to plaintiff, NBC used information from her grant proposal and her stolen computer files to set up its own earthquake monitoring system. Compl. ¶ 118.

Plaintiff alleges that Mr. Ryan, a NASA research grant recipient, "used his position to gain unauthorized access to Plaintiff's NASA contract-grant proposal funding application and the information contained therein" to cause NASA to reject her funding proposal. Compl. ¶ 119. Plaintiff also claims that Mr. Ryan conspired with defendants Fairbridge and AAAS to gain unauthorized access to her personal computer files. Compl. ¶¶ 120, 123.

#### 5. Defendants AGU and JGR ("AGU")

Plaintiff alleges that in November 1994, she submitted to AGU for publication a manuscript entitled "Evidence the Earth Fractured at the Pacific to Produce the Moon." Compl. ¶¶ 14, 91. After several months and no response from AGU, the plaintiff telephoned to inquire on the manuscript's status. The AGU's reviewer informed the plaintiff that he "could not get through the manuscript" and it was sent out to another reviewer. Compl. ¶ 93. Upon completion of the review, the plaintiff claims that AGU promised it would send a copy of the review to her. According to the plaintiff, when the envelope from AGU arrived in the mail, the review and the manuscript were missing. Compl. ¶¶ 95–96.

The plaintiff alleges that the review "heavily referenced [Professor] Emiliani's new book as bearing evidence that the Earth could not have suffered an impact because of physical constraints" as the basis for rejecting her manuscript. Compl. ¶ 97. Next, plaintiff alleges that at an AGU meeting in May of 1995, defendant Fairbridge "published an abstract from the computer file stolen from the Plaintiff" and that at the same AGU meeting "Emiliani published an abstract which had been heavily influenced by the stolen computer program near the Pittsburgh plane crash." Compl. ¶ 98. Plaintiff asserts that the idea espoused by defendant Fairbridge at the AGU meeting "involved the cycles of time which influence present terrestrial phenomena including earthquakes." Compl. ¶ 99.

Based on these facts, plaintiff alleges that defendant Fairbridge caused AGU to reject the plaintiff's manuscript by making "injurious statements to Emiliani." She also alleges that defendant Fairbridge "stole or had the computer file stolen and presented the material as his own." Compl. ¶ 100. Based on these alleged events, the plaintiff lodges claims against AGU for "negligence in the handling of her manuscript," "sexual bias and discrimination in the allowance of unfair and incorrect material facts in the review of the manuscript and its disposition," and for "trickery" and "scientific misrepresent[ation]" in the rejection of her manuscript for publication. Compl. ¶¶ 102, 139–140.

## C. Plaintiff's Claims

The plaintiff filed suit against the five groups of defendants alleging (1) violation of the D.C.Code; (2) violation of the Fourth Amendment; (3) negligence; (4) sex discrimination; and (5) violation of the Ninth and Fourteenth Amendments. The court shall address each claim *seriatim.*

## III. Standard of Review

Under Fed.R.Civ.P. 12(b)(6), a complaint should not be dismissed unless "the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *See Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). When determining the legal sufficiency of a plaintiff's claim, the court may only examine the complaint, items in the record of the case, and matters of public record. *Phillips v. Bureau of Prisons,* 591 F.2d 966, 969 (D.C.Cir.1979); *see Marshall County Health Care Auth., v. Shalala,* 988 F.2d 1221, 1226 (D.C.Cir.1993) (internal citations omitted).

 The complaint must be liberally construed in the plaintiff's favor, including any inferences derived from the factual allegations. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). The court, however, is not required to accept inferences unsupported by the facts. *Id.* The court also need not accept plaintiff's legal conclusions. (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Therefore, a complaint may be dismissed under Fed.R.Civ.P. 12(b)(6) for lack of a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984). *Pro se* complaints, however, are held to less exacting scrutiny than pleadings drafted by attorneys and "should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Nevertheless, "a *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Crisafi v. Holland,* 655 F.2d 1305, 1308 (D.C.Cir.1981).

## IV. Discussion

### A. Claims Under The District of Columbia Code

#### 1. D.C.Code § 28–3904: Consumer Protection Procedures—Unlawful Trade Practices

 Plaintiff contends that defendants NASA, AAAS, NBC, and AGU violated the District of Columbia Consumer Protection and Procedures Act (CPPA), D.C.Code § 28–3904, when they rejected her unsolicited research proposal and manuscripts. The plaintiff's claims, however, must fail because she is not a "consumer" within the meaning of the CPPA. Subsection § 28–3901(a)(2) of the CPPA defines "consumer" as

> [A] person who does or would purchase, lease (from), or receive consumer goods or services, including a co-obligor or surety, or a person who does or would provide the economic demand for a trade practice; as an adjective, 'consumer' describes anything, without exception, which is primarily for personal, household, or family use.

D.C.Code § 28–3901(a)(2) (1981) (emphasis added). "The CPPA supplies consumers with a private cause of action against merchants." *Independent Communications Network v. MCI Telecommunications Corp.,* 657 F.Supp. 785, 787 (D.D.C.1987). In this case, the plaintiff is not a consumer within the meaning of the § 28–3904 because her claims do not arise from the purchase, lease or receipt of consumer goods or services. The plaintiff's claim against NASA arises from its rejection of her funding proposal. The fact that the plaintiff submitted a research proposal to NASA does not make her a consumer within the meaning of the statute. With regard to defendant AAAS, she alleges that AAAS illicitly obtained her research and distributed that information to the public. Plaintiff, however, does not allege that she purchased, leased or received consumer goods or services from defendant AAAS, and therefore fails to establish any consumer-merchant relationship to bring it within the scope of the CCPA.

Likewise, the plaintiff's claim against defendant NBC arises from her charge that NBC stole her earthquake prediction method and profited from its use. Again, plaintiff fails to allege that she purchased, leased or received consumer goods or services from NBC. Finally, her claim against AGU relates to defendant AGU's rejection of her unsolicited manuscript for publication. The fact that plaintiff submitted a manuscript to AGU for publication does not form a consumer-merchant relationship under the CPPA. Therefore, her claims against AGU under the CPPA must also fail. Under these facts, the court concludes that the plaintiff fails to state a claim under D.C.Code § 28–3901 because she fails to allege a consumer-merchant relationship between the plaintiff and the various defendants.

### 2. D.C.Code § 35–1213: Fraternal Benefit Organizations—Fraudulent Representations

■ Plaintiff asserts that defendants NASA, AAAS, NBC and Fairbridge violated D.C.Code § 35–1213 which prohibits fraudulent representation in fraternal organization membership applications. Specifically, the plaintiff claims that defendant NASA violated § 35–1213 by rejecting her unsolicited research proposal on the basis of defendant Fairbridge's unfair and biased statements. She claims that defendant AAAS violated the statute when its members allegedly distributed her earthquake prediction ideas to others; that NBC violated the statute by illegally gaining access to her research proposal; and finally, that Fairbridge violated § 35–1213 by making false statements about the plaintiff to defendants NASA, AAAS and AGU. The plaintiff's claims are without merit.

D.C.Code § 35–1213 proscribes any person, officer, member, or examining physician from making fraudulent representations on an application for membership in fraternal benefit organizations. *See* D.C.Code § 35–1213. Here, the plaintiff is not arguing that she applied for membership with defendants NASA, AAAS, AGU and Fairbridge. Indeed, she only submitted her research proposal and manuscripts to these defendant to solicit grants and publication. Furthermore,

the plaintiff fails to allege that these defendants are fraternal benefit organizations within the strictures of D.C.Code § 35–1213. Accordingly, the court dismisses the plaintiff's claims under D.C.Code § 35–1213.

### 3. D.C.Code § 41–119: Duty of Partners to Render Information

■ The plaintiff alleges that defendants NASA, NBC, and AGU violated D.C.Code § 41–119 for rejecting her unsolicited research proposal and manuscript. Section 41–119 governs uniform partnerships and the duty of partners to truthfully provide information involving their partnership. Section 41–119 states in its entirety:

> Partners shall render on demand true and full information of all things affecting the partnership to any partner or legal representative of any deceased partner or partner under legal disability.

In this case, even construing all facts alleged in the complaint as true, the facts do not indicate that the plaintiff and defendants NASA, NBC and AGU were partners or members of a partnership. Under D.C.Code § 41–105, "a partnership is association of two or more persons to carry on as co-owners of a business for profit." Indeed, the plaintiff fails to allege that she and the defendants entered into an agreement to be partners or that they formed a partnership for profit. Accordingly, the court dismisses plaintiff's claims for failure to state any viable claims under this statute.

### 4. D.C.Code § 35–411: Defamatory or Injurious False Statements Against Companies

■ The plaintiff claims that defendant NASA defamed her in violation of D.C.Code § 35–411. Section 35–411 prohibits one company from making or publishing defamatory statements against another company. Here, the plaintiff does not allege that defendant NASA uttered defamatory statements against her or her company. Rather, the complaint only alleges that defendant NASA purportedly rejected her unsolicited research proposal based on "unfair and biased statements" made by defendant Fairbridge. Given this fact, the court concludes that the

plaintiff fails to state a claim upon which relief may be granted.

## B. Fourth Amendment Violation

■ The plaintiff alleges that defendants NASA and Fairbridge violated her Fourth Amendment rights when Fairbridge purportedly broke into her premises. Specifically, the plaintiff claims that defendant Fairbridge, a person "with an unclear employee relationship with NASA," unlawfully entered her premises and stole her research files. Compl. ¶¶ 48, 51.

■ The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ..." U.S. Const. amend. IV. This constitutional safeguard is limited to government conduct which can reasonably be said to constitute a "search" or a "seizure" within the meaning of the Fourth Amendment. *New Jersey v. T.L.O.*, 469 U.S. 325, 335, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (citing *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921)). Non-law enforcement conduct regulated by the Fourth Amendment is typically motivated by investigatory or administrative purpose designed to elicit a benefit for the government. *United States v. Attson*, 900 F.2d 1427, 1430 (citing *T.L.O.* 469 U.S. at 334–35, 105 S.Ct. 733). Thus, government conduct that is not intended to elicit a benefit for the government in either its investigative or administrative capacities is not considered a "search" or a "seizure" for the purposes of the Fourth Amendment. *Id.* at 1431 (citing *T.L.O.*, 469 U.S. at 335, 105 S.Ct. 733). Consequently, the Fourth Amendment cannot be triggered simply by a person acting on behalf of the government or while in the government's employ. *Id.* at 1429.

The plaintiff's claims under the Fourth Amendment in this case must fail because the alleged conduct does not rise to a Fourth Amendment violation. Even construing all allegations in the complaint as true, it remains unclear what relationship existed between Fairbridge and defendant NASA. The plaintiff does not allege that Fairbridge acted in any investigatory or administrative capacity on behalf of NASA when he purportedly broke into her premises. Furthermore, the plaintiff also fails to allege that defendant NASA derived any benefit from Fairbridge's conduct. Indeed, the complaint only alleges that Fairbridge obtained personal gains from this purported unlawful entry and does not describe any government benefit. *See* Compl. ¶ 18. Government conduct that does not benefit the government is outside the protection of the Fourth Amendment. *Attson*, 900 F.2d at 1429. Accordingly, the court concludes that the plaintiff fails to state a claim under the Fourth Amendment.

## C. Negligence

■ The plaintiff alleges that defendants NASA and AGU were negligent in maintaining the security of her unsolicited proposal and manuscript because they failed to safeguard against their theft by other third parties. A claim of negligence requires the plaintiff to plead "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *District of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C.1984) (internal citation omitted). Particularly, "the plaintiff must allege facts which show that the defendant breached some legally imposed duty owed to the plaintiff." *Wooldridge Mfg. Co. v. United States*, 235 F.2d 513, 514 (D.C.Cir.1956).

Here, the plaintiff's complaint does not provide any fact indicating that defendants NASA and AGU owed her any legal duty to safeguard her unsolicited proposal and manuscript. A bald assertion that because Fairbridge allegedly saw her proposal defendant NASA must have been negligent in securing it does not demonstrate that defendant NASA had a legal duty and subsequently breached it. It is well settled tort law that a failure to establish a duty owed to the plaintiff is fatal to claims of negligence. *Wooldridge*, 235 F.2d at 514. Since the plaintiff failed to plead that defendants NASA and AGU owed her any legal duty in protecting her unsolicited proposal and manuscript, the

court must dismiss these claims against these two defendants.

### D. Sex discrimination claim

The plaintiff vaguely alleges that defendants NASA, AAAS and AGU rejected her unsolicited research proposal and manuscripts because of her gender. With regard to defendants NASA and AGU, even construing the allegations in the complaint liberally, the plaintiff distinctly fails to plead sufficient facts to support this claim. Furthermore, she also fails to provide a legal basis upon which her sex discrimination claim depends. Although the court recognizes that a *pro se* plaintiff's complaint must be held to a less stringent standard, this does not absolve the plaintiff's burden of alleging sufficient facts to advance her cause of action. *Hughes,* 449 U.S. at 9, 101 S.Ct. 173. Indeed, the plaintiff cited no constitutional or statutory law to support her claims of sex discrimination against these two defendants, and therefore the court dismisses these claims.

■ With regard to defendant AAAS, the plaintiff conclusorily claims that it rejected her three manuscripts submitted for publications on the basis of her sex in violation of 42 U.S.C. § 2000a *et seq.* This statute prohibits discrimination or segregation in places of public accommodation on the grounds of race, color, religion, or national origin. 42 U.S.C. § 2000a(a). The statute defines "places of public accommodation" as venues such as inns, hotels, restaurants, bars, and theaters. 42 U.S.C. § 2000a(b). Here, the statute does not apply to plaintiff's claim of sex discrimination for two reasons. First, 42 U.S.C. § 2000a only applies to discrimination based on race, color, religion, or national origin, not to sex based discrimination. Second, the plaintiff fails to allege that defendant AAAS, a scientific journal publisher, is a place of public accommodation and is a covered entity under 42 U.S.C. § 2000a. For these reasons, the court concludes that the plaintiff fails to state any claim of sex discrimination against defendant AAAS.

### F. Ninth and Fourteenth Amendments

The plaintiff alleges that defendant AAAS engaged in "discrimination in the selection of manuscripts to be published on the basis other than scientific merit [ ] disparag[ed] Plaintiff's unenumerated rights of citizenship through a prejudgment presumably on race, sex, educational roots, or personal notions and constitutes a violation of both the Fourteenth and Ninth Amendments." Compl. ¶ 86. The plaintiff's claim is without merit.

■ "The Ninth Amendment is not a source of substantive rights, unless it is coupled with the denial of other fundamental rights." *United States v. Vital Health Products, Ltd.,* 786 F.Supp. 761, 777 (E.D.Wis. 1992), *aff'd without opinion sub nom. United States v. LeBeau,* 985 F.2d 563, 1993 WL 21970 (7th Cir.1993). "[T]he Ninth Amendment serves to protect other fundamental rights that are not set forth in the Constitution." *Id.* at 777. "Some unenumerated rights may be of Constitutional magnitude, but only by virtue of other amendments, such as the Fifth or Fourteenth Amendment." *Id.* at 777. Under this legal standard, the plaintiff in this case cannot independently asserts a cause of action under the Ninth Amendment without alleging a deprivation of other fundamental rights under the Constitution. The court therefore dismisses this claim.

■ Turning to her claims under the Fourteenth Amendment, she also fails to state a claim upon which the court can grant relief. It is well settled law that the Fourteenth Amendment prohibits any state from infringing upon a person's "life, liberty, or property without due process." U.S. Const. amend. XIV, § 1. This constitutional principle only inhibits "such action as may fairly be said to be that of the States." *Blum v. Yaretsky,* 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)(quoting *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948)). The Fourteenth Amendment does not prohibit "merely private conduct, however discriminatory or wrongful." *Id.* (internal citations omitted). To be liable for deprivation of constitutional rights under the Fourteenth Amendment, the actor must have performed a traditional public function, been compelled to act by state law, or acted in concert with the state. *See Lugar v.*

*Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Applying these "state action" requirements to this case only highlights the flaw of the plaintiff's claims against defendant AAAS. Specifically, the plaintiff does not allege that defendants AAAS was a state actor or acted under the color of law when it declined to publish her manuscripts. Accordingly, the court concludes that this fact alone undermines the plaintiff's Fourteenth Amendment claims and dismisses the plaintiff's claims against defendant AAAS.

### V. Conclusion

For the reasons stated above and in accordance with the Order issued on March 31, 1998, the court grants the various defendants' motions to dismiss and dismisses the above-captioned action with prejudice.

**SO ORDERED.**