83 F.Supp.2d 125 (1999)
In re TOBACCO/GOVERNMENTAL HEALTH CARE COSTS LITIGATION.
The Republic of Guatemala, Plaintiff,
v.
The Tobacco Institute, Inc., et al., Defendants.
MDL No. 1279. Misc. No. 99-213. Civil Action No. 98-1185 (PLF).
United States District Court, District of Columbia.
December 30, 1999.
*126 George M. Fleming, Sylvia Davidow, D'Lisa R. Simmons, Anthony E. Farah, Fleming & Associates, LLP, Houston, TX, for plaintiff.
Patrick S. Davies, Covington & Burling, Washington, DC, for Tobacco Institute, Inc.
Judah Best, Steve Michaels, Debevoise & Plimpton, Washington, DC, for Council for Tobacco Research-USA, Inc.
Joseph M. McLaughlin, John D. Roesser, Jill C. Owens, Lauren J. Rosenblum, Joseph Pantoja, Simpson Thacher & Bartlett, New York City, Robert J. Cynkar, Hamish P.M. Hume, David H. Thompson, Cooper, Carvin & Rosenthal, Washington, DC, for BAT Industries, PLC.
Thomas McCormack, Timothy M. Hughes, Susan Littell, Chadbourne & Parke, New York City, for British-American Tobacco Co., Ltd./Batus Holdings, Inc.
Robert E. Scott, Jr., Paul N. Farquharson, Semmes Bowen & Semmes, Baltimore, MD, for British-American Tobacco Co., Ltd.
Kenneth N. Bass, Karen McCartan DeSantis, Daryl Joseffer, Leigh A. Hyer, Jennifer Gardner, David M. Bernick, Gabriela Monahan, Kirkland & Ellis, Washington, DC, for Brown & Williamson Tobacco Corp.
Timothy M. Broas, Michael K. Atkinson, Dan K. Webb, Thomas J. Frederick, Todd Ehlman, Winston & Strawn, Washington, DC, Herbert M. Wachtell, Ben M. Germana, Wachtell, Lipton, Rosen & Katz, New York City, for Philip Morris Companies, Inc. and Philip Morris Inc.
Peter Woolson, Deborah L. Robinson, Hallie A. Moreland, Robinson, Woolson, O'Connell, Baltimore, MD, for Liggett Group, Inc.

OPINION
PAUL L. FRIEDMAN, District Judge.
The Republic of Guatemala has brought suit in this Court against nine individual tobacco companies and the tobacco industry's public relations and research organizations. Guatemala claims that it failed to regulate the use of tobacco products by its citizens adequately because of the tobacco industry's continued misrepresentations and anticompetitive behavior regarding the health impacts of tobacco. It seeks to recover the health care costs it incurred in treating its citizens' smoking-related illnesses. The Court will dismiss all of Guatemala's claims because the alleged injury is too remote and completely derivative of the injuries suffered by individual Guatemalan smokers.

*127 I. BACKGROUND
The Republic of Guatemala is a sovereign Central American nation with a population of approximately ten million people. Under its constitution, Guatemala must guarantee its citizens the enjoyment of their fundamental rights, including the enjoyment of their health. Guatemala consequently provides a number of free health benefits and services to its citizens, including medical treatment in public clinics and hospitals throughout the country.
Guatemala asserts that it incurred unnecessarily high health-care costs between 1973 and 1997 because it was misled by the defendants about the health risks associated with smoking. It maintains that since the 1950's the defendants have conspired together to conceal and misrepresent the health risks of smoking and the addictive nature of nicotine, to manipulate nicotine levels in cigarettes in order to maintain addiction, to stop using health-related issues to compete with one another, and to suppress the market for less harmful cigarettes. Plaintiff's First Amended Complaint ("Am.Compl.") ¶ 69. As a result of this conspiracy, Guatemala allegedly did not take regulatory action to reduce cigarette smoking by its citizens and to mitigate the harmful effects of the cigarettes its citizens smoked, thereby causing Guatemalan citizens to be stricken with more smoking-related illnesses and causing Guatemala to have to pay a greater amount of associated health care costs. Id. ¶¶ 79-84.
Guatemala has sued a group of companies affiliated with Philip Morris (Philip Morris Companies, Philip Morris Incorporated and Philip Morris International); a group of companies affiliated with the British American Tobacco Corporation (BAT Industries, BATCo, BATUS Holdings and Brown & Williamson Tobacco Corporation); two companies affiliated with the Liggett Group (Liggett Group and Brooke Group Limited); the Tobacco Institute and the Council for Tobacco Research-U.S.A. It has not sued Tabacalera Centroamericana, S.A., a subsidiary of Philip Morris, and Tabacalera Nacional, S.A., a subsidiary of the British American Tobacco Corporation, the only two companies that do business directly in Guatemala.
As alleged, Guatemala's injury "is not a form of compensation for personal injuries suffered by those Guatemalan residents who smoke the cigarettes [d]efendants advertise, manufacture, distribute and/or sell in Guatemala. It is a direct injury to Guatemala's property and is separate and wholly distinct from the harms suffered by Guatemalan residents." Am.Compl. ¶ 132. In particular, because the industry's misrepresentations purportedly caused Guatemala to permit more smoking by its citizens than it would have permitted had it known the truth, and because the defendants allegedly suppressed the introduction of less harmful cigarettes, Guatemala claims that it incurred over $300 million in unnecessary health care costs between 1973 and 1997. Id. ¶¶ 82, 83. Guatemala brings its claims for relief on six separate theories: (1) common law fraud and intentional misrepresentation, (2) conspiracy to commit fraud and misrepresentation, (3) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (4) violations of both federal and District of Columbia antitrust laws through the suppression of competition in the cigarette and health care markets, (5) negligent misrepresentation, negligence and gross negligence, and (6) negligent performance of a voluntary undertaking.
BAT Industries, BATCo, and BATUS Holdings (the "Rule 12(b)(2) defendants") moved to dismiss the complaint as against them for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. All the other defendants except Liggett and Brooke Group Limited (the "Rule 12(b)(6) defendants") moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. At Guatemala's request, the Court allowed limited jurisdictional discovery regarding the Rule 12(b)(2) defendants' arguments respecting *128 personal jurisdiction. Guatemala was permitted to file an amended complaint at the close of discovery, and the parties' motions then were updated for the amended complaint and to take account of the fruits of the jurisdictional discovery.
The Court now has before it defendants' motions to dismiss plaintiff's complaint on a number of grounds. While the Court has considered all of defendants' arguments, it need only address one. Upon consideration of the motions filed, the oppositions and replies, the oral argument of counsel at the March 19, 1999 hearing and the supplemental briefs filed after argument, the Court grants defendants' motion to dismiss all counts of Guatemala's complaint because all of Guatemala's alleged injuries are too remote to have been proximately caused by defendants' misconduct.[1]

II. DISCUSSION
The Court may dismiss a complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. See Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C.Cir.1994). The complaint must be liberally construed in the plaintiff's favor and the Court must accept any reasonable inferences derived from well-pleaded factual allegations. See Slaby v. Fairbridge, 3 F.Supp.2d 22, 27 (D.D.C.1998). The Court need not accept plaintiff's inferences if they are unsupported by facts or its legal conclusions. Id.

A. Remoteness
Under the doctrine of remoteness, a plaintiff who complains of harm "flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268-69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). The doctrine of remoteness is a component of proximate cause, which in turn embraces the concept that "the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing." Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 536, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); see Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 927 (3d Cir.1999) ("Remoteness is an aspect of the proximate cause analysis, in that an injury that is too remote from its causal agent fails to satisfy tort law's proximate cause requirement ...").
As one of the most elusive concepts found in the law, proximate cause does not lend itself to precise definition. "[T]he infinite variety of claims that may arise make it virtually impossible to announce a black-letter rule that will dictate the result in every case." Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. at 536, 103 S.Ct. 897. The inquiry is "always to be determined on the facts of each case upon mixed considerations of logic, common sense, policy and precedent." Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 235 (2d Cir.1999) (quoting W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 42 at 279 (5th ed.1984)). To afford some guidance in this uncertain area, the courts have tried to "identify factors that circumscribe and guide the exercise of judgment in deciding whether the law affords a remedy in specific circumstances." Associated Gen. Contractors of California, Inc. v. California *129 State Council of Carpenters, 459 U.S. at 536, 103 S.Ct. 897.[2]
Defendants argue that even accepting any reasonable inferences that could be derived from the factual allegations in Guatemala's complaint, the doctrine of remoteness bars all of Guatemala's claims. More specifically, defendants argue that Guatemala's alleged injury is so attenuated from defendants' alleged wrongful conduct and so indirect as to require dismissal. To demonstrate, defendants identify five steps in the causal chain linking Guatemala's injury to defendants' alleged conduct: (1) Guatemala's reliance upon defendants' alleged misrepresentations, which led to (2) Guatemala's failure to implement smoking cessation efforts, which led to (3) smoking (or increased smoking) by Guatemala's citizens, which led to (4) Guatemala's citizens having suffered personal injuries and having incurred medical expenses, which led to (5) Guatemala having paid those medical expenses. Because Guatemala would never have been required to pay any medical expenses in the absence of steps three and four  the decisions of its citizens to smoke and the injuries to its citizens that required medical attention  defendants contend that Guatemala's injuries are inescapably derivative of those of its citizens. In other words, defendants argue that Guatemala is complaining of a "harm flowing merely from the misfortunes visited upon a third person by the defendant's acts"  precisely the type of injury for which the doctrine of remoteness precludes relief. Holmes v. Securities Investor Protection Corp., 503 U.S. at 268, 112 S.Ct. 1311.
Guatemala responds that defendants' analysis too rigidly applies the doctrine of remoteness. It argues that the Court must undertake a subjective analysis to decide whether the alleged conduct and injury are sufficiently related to establish proximate cause. In particular, Guatemala points to the three factors considered by the Supreme Court in Holmes in finding that the plaintiff's injury there was too remote: (1) whether the court would find it difficult to determine what damages were caused by defendant's misconduct rather than by independent factors; (2) whether the court would be forced to "adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury ... to obviate the risk of multiple recoveries"; and (3) whether "the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general...." Holmes v. Securities Investor Protection Corp., 503 U.S. at 269-70, 112 S.Ct. 1311.
While the application of the doctrine of remoteness is not so clear-cut as defendants suggest and does give courts flexibility in determining in a particular case whether a specific injury is remote from the alleged act of misconduct, the Court nevertheless concludes that the injury alleged by Guatemala in this case is too remote to find proximate cause under traditional remoteness analysis. Despite Guatemala's claim in its complaint that its injury was "direct," it was not. See Am. Compl. ¶ 132. Guatemala's allegation is that defendants' misconduct was aimed directly at it, but it is abundantly clear that the injury that Guatemala purportedly suffered occurred only as a consequence of the harm to individual smokers. Casting the complaint in language that alleges a direct harm to Guatemala does not alter the derivative nature of the injury actually claimed. The fact is that the injury claimed "was no more direct than the indirect injury that arose from the defendants' actions toward smokers." Steamfitters *130 Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d at 927. "[A]ll of plaintiffs' claims rely on alleged injury to smokers  without any injury to smokers, plaintiffs would not have incurred the additional expenses in paying for the medical expenses of those smokers." Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc., 185 F.3d 957, 963 (9th Cir.1999). Any asserted violations of defendants' alleged duty to Guatemala simply "have not been directly linked to [Guatemala's] increased health care expenses given the existence of the essential intervening link of injured individual smokers." City and County of San Francisco v. Philip Morris, Inc., 957 F.Supp. 1130, 1137 (N.D.Cal.1997).
"The tortured path that one must follow from the tobacco companies' alleged wrongdoing to the [plaintiff's] increased expenditures demonstrates that the [plaintiff's] claims are precisely the type of indirect claims that the proximate cause requirement is intended to weed out." Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d at 930. The Court's own assessment of what is direct and what is remote leads ineluctably to the conclusion that the common law notions of proximate cause and directness of injury cannot support the claims asserted in this case because there is no "direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Securities Investor Protection Corp., 503 U.S. at 268, 112 S.Ct. 1311. Plaintiff's claims are simply too remote, contingent, derivative and indirect to survive.
When one turns to the separate analytical framework Guatemala itself suggests, the result is no different. The application of the three Holmes factors also support the Court's conclusion. First, plaintiff's damages, if any, would be speculative and too difficult to ascertain. See Holmes v. Securities Investor Protection Corp., 503 U.S. at 269, 112 S.Ct. 1311 ("[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors"). As an initial matter, the Court would be required to evaluate the efforts the Guatemalan government likely would have taken to control tobacco usage if the tobacco industry had not communicated allegedly fraudulent and misleading information. Few inquiries are more speculative than this. In other contexts, courts traditionally have been reluctant to deconstruct the reasons for governmental decision-making because of the great number of subjective influences at play. See City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 377, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991) ("This would require the sort of deconstruction of the governmental process and probing of the official `intent' that we have consistently sought to avoid"); Rosado v. Wyman, 397 U.S. 397, 419, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) ("speculation as to the legislative and executive motive is to be shunned").
The Court also would be required to speculate about the potential impact that any smoking cessation efforts of the Guatemalan government would have had on the behavior of individual smokers, as well as the extent to which the health care costs of Guatemalan citizens are attributable to smoking as opposed to other etiologies. As the Second Circuit noted in dismissing a similar claim brought by union health and welfare funds:
It will be virtually impossible for plaintiffs to prove with any certainty: (1) the effect any smoking cessation programs or incentives would have on the number of smokers among the plan beneficiaries; (2) the countereffect that the tobacco companies' direct fraud would have had on the smokers, despite the best efforts of the Funds; and (3) other reasons why individual smokers would continue smoking, even after having been informed of the dangers of smoking and having been offered smoking cessation programs. On a fundamental level, *131 these difficulties of proving damages stem from the agency of the individual smokers in deciding whether, and how frequently, to smoke. In this light, the direct injury test can be seen as wisely limiting standing to sue in those situations where the chain of causation leading to damages is not complicated by the intervening agency of third parties (here, the smokers) from whom the plaintiffs' injuries derive.
Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d at 239-40; see also Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc., 185 F.3d at 965 (quoting Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.); Seafarers Welfare Plan v. Philip Morris, 27 F.Supp.2d 623, 632 (D.Md.1998) ("[I]t would be extremely difficult, if not impossible, to determine whether, and the extent to which, any of the Funds' participants had other health problems which may have exacerbated the costs of health care for that smoker").
In addition, the Court would be required to speculate as to how much more money Guatemala spent to treat its citizens' smoking-related illnesses than it would have spent to treat whatever other health problems eventually might plague those same citizens. As Judge Easterbrook recently observed:
To determine damages, ... it is essential to compare the costs the insurers actually incurred against the costs they would have incurred had cigarettes been safer. Is death from lung cancer at age 60 more costly to an insurer than the same person's death from a different kind of cancer later in life?
International Brotherhood of Teamsters v. Philip Morris Inc., 196 F.3d 818, 823 (7th Cir.1999). The aggregation of these layers of conjecture would result in little certainty regarding an assessment of damages or a determination of what damages are attributable to defendants' alleged violations of law as distinct from other independent factors.
Second, because the tobacco industry's misconduct allegedly injured individual smokers as well as the Guatemalan government (and perhaps caused injuries to other Guatemalan payors for health care as well), the Court would be required to adopt "complicated rules apportioning damages among plaintiffs removed at different levels of injury ... to obviate the risk of multiple recoveries." Holmes v. Securities Investor Protection Corp., 503 U.S. at 269, 112 S.Ct. 1311. In many United States jurisdictions, including this one, the collateral source rule would allow individual smokers to recover their own medical expenses irrespective of Guatemala's having already paid their medical bills or costs. See, e.g., District of Columbia v. Jackson, 451 A.2d 867, 871 & n. 4 (D.C.1982) (a victim may retain both a judgment against a tortfeasor and a benefit from a collateral source "even if the benefit is completely gratuitous"). Although Guatemala may be pursuing the recoupment of these medical expenses under different legal theories than would individual smokers, it still seeks damages for identical injuries and the Court would need to address the potential inequity of this situation.[3]
*132 Third, actions by remote plaintiffs are unjustified when other potential plaintiffs exist who could "be counted on to vindicate the law as private attorneys general...." Holmes v. Securities Investor Protection Corp., 503 U.S. at 269, 112 S.Ct. 1311. With the myriad of direct claims that have been brought against the tobacco industry in the last few years, it cannot seriously be asserted that there is any lack of such "private attorneys general." See, e.g., Saundra Torry, Cigarette Firms Lose Huge Suit; Jury Finds `Outrageous Conduct,' WASH. POST, July 8, 1999 at A1. The individual Guatemalan smokers are entirely capable of bringing their own lawsuits to recover their medical expenses and damages for other causally connected injuries such as pain and suffering. See Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc., 185 F.3d at 964 ("[T]here is an identifiable group of persons  smokers  whose self-interest will motivate them to seek recovery of the damages caused by defendants' alleged wrongful conduct"). Guatemala also might bring a subrogation action to recover the medical costs it has paid out for the individual smokers. Furthermore, the fact that such actions by individual Guatemala citizens or in subrogation by Guatemala itself would more logically be pursued in the courts of Guatemala rather than here is all to the good. The injury occurred there, two potential defendants not sued in this action (Tabacalera Centroamericana, S.A. and Tabacalera Nacional, S.A.) reside and do business there, and the courts of Guatemala are at least as well-positioned to vindicate the rights of its citizens as is this Court.[4]
Guatemala argues in the alternative that even if its injury is too remote to support some of its claims, most claims should survive because it has alleged intentional instead of negligent misconduct by the defendants. But many of the seminal cases barring remote claims, including Holmes itself, involved allegedly intentional conduct. See, e.g., Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (securities fraud); Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (antitrust conspiracy); Mobile Life Ins. Co. v. Brame, 95 U.S. 754, 24 L.Ed. 580 (1877) (murder); Anthony v. Slaid, 52 Mass. (11 Metcalf) 290 (1846) (assault). In fact, the Supreme Court has specifically stated that under the doctrine of remoteness the availability of a remedy "is not a question of the specific intent of the conspirators." Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. at 537 & n. 37, 103 S.Ct. 897 (quoting Blue Shield v. McCready, 457 U.S. 465, 479, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982)). "[A]n allegation of specific intent does not overcome the requirement that there must be a direct injury to maintain this action." Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d at 242; see also Pillsbury, Madison & Sutro v. Lerner, 31 F.3d 924, 929 (9th Cir.1994).
Finally, as several courts have recognized in similar instances, a "failure to apply the remoteness doctrine [in a case like this] would permit unlimited suits to be filed." Iowa v. Philip Morris, Inc., 577 N.W.2d 401, 407 (Iowa 1998); see also Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, 17 F.Supp.2d 1170, 1179 (D.Or.1998) (dismissal was appropriate to avoid opening the door to the "indirect, massive and complex damage litigation that the Supreme Court sought to preclude in Holmes"), aff'd 185 F.3d 957 (9th Cir.1999); cf. Dundee Cement *133 Co. v. Chemical Laboratories, Inc., 712 F.2d 1166, 1171 (7th Cir.1983). This concern applies with particular weight in this instance, where dozens of foreign governments, as well as other foreign health care payors, might attempt to bring similar suits in United States courts. Both the analytical framework mandated by the Supreme Court in Holmes and the relevant policy considerations therefore support the conclusion that Guatemala's alleged injury is too remote to permit suit.[5]

B. Parens Patriae
Guatemala's status as a sovereign government gets it no further. While it is established that a state government has standing to sue in a parens patriae action to protect its quasi-sovereign interests, it may do so only in limited circumstances. First and foremost, it "must articulate an interest apart from the interests of particular private parties," that is to say, "the State must be more than a nominal party." Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. 592, 600, 607, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982). Second, it must sue to vindicate a "quasi-sovereign" interest, which may be either (1) an interest in "the health and well-being  both physical and economic  of its residents in general," or (2) an interest "in not being discriminatorily denied its rightful status within the federal system." Id. at 607, 102 S.Ct. 3260. Finally, its "quasi-sovereign interest must be sufficiently concrete to create an actual controversy between the State and the defendant." Id. at 602, 102 S.Ct. 3260.
While there is some dispute as to whether a foreign sovereign may bring suit in a United States court at all under a parens patriae theory,[6] clearly if it can the second category of interests  not being discriminated against within the federal system  is irrelevant in the case of a foreign sovereign. With respect to the first category of interests  the physical and economic well-being of its citizens  injury to the foreign sovereign is cognizable (1) when "the direct impact of the wrong [would] be felt by a substantial majority, *134 though less than all, of the state's citizens, so that the suit can be said to be for the benefit of the public," or (2) when there is "substantial generalized economic effects" although "the most direct injury is to a fairly narrow class of persons." Commonwealth of Pennsylvania v. Kleppe, 533 F.2d 668, 670 (D.C.Cir.1976). As the Court has no reason to conclude that the direct impacts of smoking have been felt by the "substantial majority" of Guatemala's citizens, the only quasi-sovereign interest that Guatemala might assert in this case is its interest in recovering for "substantial generalized economic effects." Guatemala, however, has explicitly stated that the damages it is seeking are "to its own business or property (its treasury) and not to the general economy." Guatemala's May 7, 1999 Limited Reply at 10; see Am.Compl. ¶¶ 29, 78, 131, 145, 172, 185. Such damages implicate Guatemala's proprietary interests, not its quasi-sovereign interests, and Guatemala therefore cannot bring a parens patriae action to vindicate these interests.
Even if the Court were to find that Guatemala had asserted some cognizable quasi-sovereign interest, the fact that there are individual Guatemalan smokers capable of bringing suit to redress these injuries in the courts of Guatemala would prevent Guatemala from bringing suit as parens patriae. Parens patriae standing is rarely appropriate in "the presence of a more appropriate party or parties capable of bringing suit," Pennsylvania v. Kleppe, 533 F.2d at 675, and such suits "cannot be brought to collect the damages claim of one legally entitled to sue in his own right." Pfizer, Inc. v. Lord, 522 F.2d at 616. "Parens patriae standing appears to be most justifiable in those instances where undeniable harm has been done, but for some reason the individual injuries are not legally cognizable." Pennsylvania v. Kleppe, 533 F.2d at 675 n. 42. After all, the theoretical underpinning of parens patriae standing is to "prevent[ ] ... injury to those who cannot protect themselves." Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. at 600, 102 S.Ct. 3260 (quoting Late Corp. of Church of Jesus Christ of Latter-Day Saints v. United States, 136 U.S. 1, 57, 10 S.Ct. 792, 34 L.Ed. 478 (1890)). As previously noted, however, the individual Guatemalan smokers are entirely capable of protecting themselves. See supra at 12-13, 10 S.Ct. 792. There is no need to allow Guatemala to bring suit to protect their interests.

* * * * * *
Finally, if the Court were to reach defendants' other arguments, it would dismiss on many of those grounds as well. For example, Guatemala has failed sufficiently to allege antitrust injury.[7] A plaintiff in an antitrust suit may only bring suit if it has suffered an "antitrust injury," which the Supreme Court has defined as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). As this Court said in Dial A Car Inc. v. Transportation, Inc.:
The injury claimed must "reflect the anticompetitive effect, either of the violation or of anticompetitive acts that [were] made possible by the violation." ... The antitrust laws were not intended to prevent losses that result from increased competition but those resulting from activity that may tend to lessen competition.... The reason an antitrust plaintiff is required to plead antitrust injury is to assure that a plaintiff can *135 recover "only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior."
884 F.Supp. 584, 589 (D.D.C.1995) (citations omitted), aff'd, 82 F.3d 484 (D.C.Cir. 1996). Guatemala's complaint alleges no "competition-reducing aspect or effect" in the cigarette market. See International Brotherhood of Teamsters v. Philip Morris Inc., 196 F.3d 818, 825; Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc., 185 F.3d at 966-67; State of Texas v. American Tobacco Co., 14 F.Supp.2d 956, 969-70 (E.D.Tex.1997); Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 7 F.Supp.2d 277, 290 n. 9 (S.D.N.Y.1998), aff'd 191 F.3d 229 (2d. Cir.1999).[8]

III. CONCLUSION
If it has been injured, the Republic of Guatemala, like any other litigant, may bring suit in this Court to vindicate its interests. The same principles of American jurisprudence that would be applied in testing any other litigant's claims, however, must be applied in evaluating the claims asserted by Guatemala. Guatemala or its citizens may well have been victims of the tobacco industry, but Guatemala has alleged no injury resulting from defendants' alleged misconduct that is sufficiently direct to allow Guatemala to assert its claims. Guatemala's complaint therefore must be dismissed.
An Order consistent with this Opinion is entered this same day.
SO ORDERED.

ORDER AND JUDGMENT
Upon consideration of defendants' motions to dismiss, the oppositions and replies, the oral argument of counsel at the March 19, 1999 hearing and the supplemental briefs filed after argument, it is hereby
ORDERED that defendants' motion to dismiss for failure to state a claim is GRANTED; it is
FURTHER ORDERED that defendants' motions to dismiss for lack of personal jurisdiction are DENIED without prejudice as moot; it is
FURTHER ORDERED that JUDGMENT is entered for defendants; it is
FURTHER ORDERED that this Order shall constitute a FINAL JUDGMENT in this case; and it is
FURTHER ORDERED that this case is dismissed with prejudice from the docket of this Court.
SO ORDERED.
NOTES
[1] The undersigned notes that Judge Gladys Kessler of this Court recently ruled that similar lawsuits brought by labor union health and welfare trust funds were not too remote to state a claim. See Service Employees Intern. Union Health & Welfare Fund v. Philip Morris, Inc., 83 F.Supp.2d 70 (D.D.C. 1999).
[2] The Supreme Court also has imported the general common law requirement of proximate cause and the specific requirement that plaintiff's injury must not be remote and indirect into lawsuits brought under the RICO and antitrust statutes. See Holmes v. Securities Investor Protection Corp., 503 U.S. at 268, 112 S.Ct. 1311; Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. at 536, 103 S.Ct. 897.
[3] In Service Employees Intern. Union Health & Welfare Fund v. Philip Morris, Inc., Judge Kessler stated that the "single satisfaction rule" would eliminate the possibility of multiple recoveries because that rule would "allow [d]efendants to get credit for damages paid to [the union health and welfare funds] should there be any subsequent lawsuits awarding damages to Fund participants, employers, or health insurers, to the extent those damages overlapped." 83 F.Supp.2d 70 (D.D.C. 1999). The "single satisfaction rule," however, would not mandate the suggested result; it only forbids a single plaintiff from recovering "doubly, in whole or in part, for the same injury." Lamphier v. Washington Hosp. Ctr., 524 A.2d 729, 734 (D.C.1987). See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d at 239-40 ("The single satisfaction rule is often used to prevent a single plaintiff from recovering its damages several times over from multiple defendants"). In this case, there potentially are multiple plaintiffs seeking compensation for the same injury.
[4] That individual smoker and subrogation actions would be subject to affirmative defenses not available to the tobacco industry in this case is irrelevant. Affirmative defenses exist in the law for sound policy reasons, and the success of the tobacco industry's assertion of them must be judged by whether it would effectuate the policies.
[5] The majority of state and federal courts, including all four federal courts of appeals that have reached the issue, also have held that claims by third-party payors for tobacco-related health care expenses are too remote and indirect to allow recovery. See, e.g., Int'l Brotherhood of Teamsters v. Philip Morris Inc., 196 F.3d 818 (7th Cir.1999); Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d 229 (2d Cir.1999); Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc., 185 F.3d 957 (9th Cir.1999); Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912 (3d Cir.1999); Northwest Laborers-Employers Health & Security Trust Fund v. Philip Morris, Inc., 58 F.Supp.2d 1211 (W.D.Wash. 1999); Hawaii Health & Welfare Trust Fund for Operating Engineers v. Philip Morris, Inc., 52 F.Supp.2d 1196 (D.Haw.1999); Laborers' and Operating Engineers' Utility Agreement Health & Welfare Trust Fund for Arizona v. Philip Morris, Inc., 42 F.Supp.2d 943 (D.Ariz. 1999); Regence Blueshield v. Philip Morris, Inc., 40 F.Supp.2d 1179 (W.D.Wash.1999); Seafarers Welfare Plan v. Philip Morris, 27 F.Supp.2d 623 (D.Md.1998); City and County of San Francisco v. Philip Morris, Inc., 957 F.Supp. 1130 (N.D.Cal.1997); Southeast Florida Laborers District Health and Welfare Trust Fund v. Philip Morris, 1998 WL 186878 (S.D.Fla. Apr.13, 1998); Iowa v. Philip Morris, Inc., 577 N.W.2d 401 (Iowa 1998). Minnesota v. Philip Morris, Inc., 551 N.W.2d 490 (Minn.1996); Washington v. American Tobacco Co., 1997 WL 714842 (1997); Maryland v. Philip Morris, Inc., 1997 WL 540913 (Md. Cir.Ct. May 21, 1997). But see Service Employees Intern. Union Health & Welfare Fund v. Philip Morris, Inc., 83 F.Supp.2d 70 (D.D.C. 1999); Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 36 F.Supp.2d 560 (E.D.N.Y.1999); State of Texas v. American Tobacco Co., 14 F.Supp.2d 956 (E.D.Tex.1997).
[6] Compare Coordination Council for N. Am. Affairs v. Northwest Airlines, Inc., 891 F.Supp. 4, 7 n. 3 (D.D.C.1995) ("Foreign sovereigns are equally entitled to protect their citizens and may claim parens patriae standing to the same extent as a state") with Estados Unidos Mexicanos v. DeCoster, 59 F.Supp.2d 120 (D.Me.1999) (Mexico does not have standing under the parens patriae doctrine to protect its quasi-sovereign interests). Cf. Pfizer, Inc. v. Lord, 522 F.2d 612, 616 (8th Cir.1975).
[7] Because the District of Columbia antitrust statute is also governed by the same principles, the Court would dismiss all of Guatemala's antitrust claims on these grounds. See Mazanderan v. Independent Taxi Owners' Ass'n, 700 F.Supp. 588, 591 n. 9 (D.D.C.1988) (in construing the District of Columbia Antitrust Act, "a court of competent jurisdiction may use as a guide interpretations given by federal courts to comparable antitrust statutes").
[8] Furthermore, if the Court had reached the additional issues raised by defendants, at least three defendants would be dismissed for lack of personal jurisdiction, and the fraud-based claims, including Guatemala's RICO claim, would be dismissed, albeit without prejudice, for failure to plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.